Argued December 16, 1976, affirmed as modified, costs to neither party
January 31, reconsideration denied March 16, petition for review
denied June 1, 1977

In the Matter of the Marriage of
LESSER, *Appellant,*
*and*
LESSER, *Respondent.*
(No. 31152, CA 6732)

559 P2d 532

Francis E. Marsh, McMinnville, argued the cause
for appellant. With him on the brief were Marsh,
Marsh & Haugeberg, McMinnville.

George H. Layman, Newberg, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

FORT, J.

**FORT, J.**

Following a marriage of nearly 40 years, the parties sought and were granted a dissolution of it. The three children of the marriage, ranging from 26 to 33 years of age, are all living independently with families of their own. The husband, a former teacher and book salesman, is now retired. The wife, 11 years his junior, is a high school teacher. She appeals, challenging those portions of the decree relating to division of property and attorney fees.

Both parties were diligent, frugal, hard working spouses and parents. By dint of these qualities they acquired substantial assets. The wife was 19 and had had one year of college education at the time of the marriage in 1936. The principal asset of the parties, a farm, was acquired in 1946, the major portion for $20,000 and a smaller adjoining piece a few years later for $4,400, making a total investment of about $25,000. The original investment came in part from sale of other acreage acquired earlier during the marriage and in part from money furnished by the wife's father, who prior to his death had lived for many years with the Lessers. The farm acreage consisted in total of 164 acres. A portion of it is in Yamhill County and a part in Washington County. Since the purchase of the final piece in 1950 it has, needless to say, greatly increased in value. The 29 acre piece acquired in 1950, known now as the Teppola contract, was sold in September 1972 for $46,000 with no significant improvements, more than 10 times its original cost. Another 25 acres, known now as the Burton contract, was sold in August 1973, also without significant improvements, for $37,500, being $1,500 an acre.

Additional property of substantial value in the form of securities, retirement funds, home in Oregon City, livestock, farm equipment, and some miscellaneous assets, were accumulated. The principal dispute arises out of the fact that the court awarded the husband an undivided three-fourths of the farm and

also a life estate in the undivided one-fourth awarded the wife. The husband contends that despite the admitted disproportionate division it is equitable when consideration is given to the award of the Oregon City house, worth about $21,000, the difference between his retirement of about $6,000 a year and her salary of about $17,000, the fact he is 70 while she is 59, and because following the destruction of the farmhouse by the Columbus Day Storm in 1962, the husband had done the bulk of the work in the building of the as yet uncompleted farm home, and had also done the work on the farm.

It is not disputed that the lion's share of the property was given to the husband. Respondent concedes that taking the valuations most favorable to him and making certain other adjustments favorable to him, he receives property valued at $157,778.42 and the wife but $97,726.13. The wife, on the other hand, based on her valuations, places the husband's share at $214,349.32 and hers at $86,757.83, of which her one-fourth interest in the farm property was subjected to a life estate in the husband, thus substantially reducing the current value of her share.

The wife and the children lived and labored upon the farm for many years, as did the husband when his work permitted. This is established not only by the mother but also by the testimony of both of the married daughters, each of whom testified that they still resented their father, whom they felt had made unfair and unreasonable demands upon them concerning heavy farm labor during the years they were at home.

The wife returned to college in 1954 with funds furnished largely by her father and obtained the requisite degrees to qualify her as a teacher. While in college she lived on the farm, raised the children and assumed much of the responsibility for the farm's operation. The husband sold books, which required him to be away from the farm for substantial portions

of his time until he began teaching again in the middle fifties. Wife began teaching in 1958, immediately after graduation from college. From then on until the husband's retirement each taught school full time in various districts both east and west of the Cascades, though generally in the area of the farm, which served as their home. In 1968 the wife began teaching in the high school at Oregon City and has continued to do so since. She bought a home for $13,000 in Oregon City in 1968, and has made that her principal residence since. Until 1972 both were earning salaries as teachers approximately equal in amount. Beginning with 1972, only the wife continued to be employed, but the husband began to receive retirement. So far as we can determine, at no time did the farm operate at other than a loss. For the years 1968 through 1974 its losses totaled $20,035.79, and in no year did it lose less than $1,000. It is obvious that at all times the Lessers were directly dependent upon their respective earnings and in recent years upon the capital gains derived primarily from the sale of portions of the farm, and the income derived therefrom.

On March 3, 1976, the balance due on the Teppola contract was $23,666.67. This by decree was given the husband. The balance then due on the Burton contract was $15,029.18 and was awarded to the wife. The Oregon City property was at that time worth about $22,000. The lower of the two appraisals set the value on the farm buildings, including the partially finished dwelling, which the husband occupied, at $22,878. During the course of building the farm residence after it had been destroyed, a process as yet uncompleted, the husband borrowed $7,000 on a life insurance policy owned by him. Thus the value of the Oregon City home on the one hand and that of the farm buildings alone on the other, is substantially equal. And the difference in the equities of the Teppola and Burton contracts approximate the money borrowed on his life policy. Neither party seriously challenges the division of the

remaining assets, which were divided approximately equally. All of the real estate is unencumbered.

■ Based upon the foregoing statement and our analysis of the lengthy transcript and record, we modify that portion of the decree relating to the farm as follows:

(a) The farm consisting of approximately 110 acres, including the buildings thereon, shall be awarded to the parties equally as tenants in common.

(b) The award of a life estate to the husband in the wife's undivided interest in the farm is eliminated.

■ If the parties are unable to effect a mutually satisfactory division or disposition of the farm we point out that relief pursuant to ORS 107.105(4) is available to each.

■ Appellant wife also challenges the allowance of only $1,500 on her attorney fee. In view of the substantial modification we have made in the decree, the liquidity of many of the assets awarded to each and the wife's superior present earning power, we decline to change that award. For the same reason we conclude that in this court each party shall bear his own costs and attorney fees.

Affirmed as modified. Costs to neither party.